# United States Court of Appeals
## For the First Circuit

No. 04-2062

UNITED STATES OF AMERICA,

Appellee,

v.

ROY PIZARRO-BERRÍOS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Selya, Circuit Judges.

Jorge L. Armenteros-Chervoni, for appellant.
Germán A. Rieckehoff, Assistant United States Attorney, with whom Nelson Pérez-Sosa, Assistant United States Attorney, and H.S. García, United States Attorney, were on brief, for appellee.

May 5, 2006

**TORRUELLA**, **Circuit Judge**.  Defendant-Appellant Roy Pizarro-Berríos ("Pizarro") pled guilty pursuant to a straight plea (i.e., without a plea agreement) to conspiracy to commit credit card, bank fraud, and conspiracy to launder money.  He now appeals, arguing that his plea was not knowing and intelligent and challenging his sentence.  We affirm in part, vacate in part, and remand to the district court.

## I.

Pizarro participated in a conspiracy involving the use of counterfeit credit cards, forged checks, and false identification documents to purchase merchandise from various businesses.  The merchandise was used either for the conspirators' benefit or resold, with the earnings being distributed to members of the conspiracy.  The conspiracy ran from December 2002 through November 2003.  Pizarro's role in the conspiracy was to make purchases at local businesses using the counterfeit credit cards.[1]

In April 2003, Pizarro was arrested and put in state custody after attempting to make a purchase at a supermarket in the town of Canóvanas, Puerto Rico, using a forged check.  While being held in state custody, Pizarro gave an oral statement (the

---

[1]  A more detailed discussion of the various aspects of the underlying conspiracy is not necessary for a resolution of this case.

"confession")[2] to Agent Israel Santiago-Monserrate ("Santiago") of the Puerto Rico Police Department, discussing the details of the conspiracy and his involvement in it. Santiago transcribed the confession and Pizarro signed the document. Pizarro was incarcerated in state prison on July 7, 2003. On August 21, 2003, Pizarro entered a guilty plea to the state charges and was sentenced to two years in prison.

Meanwhile, the other conspirators were arrested by federal authorities. On December 3, 2003, Pizarro was released from state prison pursuant to a writ of habeas corpus ad prosequendum so that he could face federal charges for his involvement in the conspiracy. On December 8, a federal grand jury returned an indictment against the members of the conspiracy. Counsel was appointed for Pizarro on December 10. On January 28, 2004, a twelve-count superseding indictment issued. The superseding indictment charged Pizarro with conspiracy to commit credit card fraud, in violation of 18 U.S.C. §§ 371, 1029(a) ("Count One"); bank fraud, in violation of 18 U.S.C. §§ 2, 1344 ("Count Two"); conspiracy to launder money, in violation of 18 U.S.C. § 1956(a)(1) and (h) ("Count Three"); and identification fraud, in violation of 18 U.S.C. § 1028(a)(4) ("Count Nine").

---

[2] The parties argue about whether the statement was a confession, a sworn statement, or simply a statement. For the sake of clarity, we will refer to it as a "confession," as we will also be discussing other statements Pizarro made.

-3-

According to the government, Pizarro spoke with federal agents prior to his federal indictment and indicated that he wanted to cooperate with the government. Some of these conversations were summarized in what the FBI calls 302 forms.[3] The government eventually offered Pizarro a plea agreement, which he decided not to take after consulting with his counsel. According to the government, the Assistant United States Attorney ("AUSA") handling the case told Pizarro's counsel that none of Pizarro's statements summarized in the 302 forms would be used at trial.

On February 24, 2004, Pizarro filed a motion for change of plea. At a change of plea hearing held before the district court on March 1, 2004, Pizarro entered a straight guilty plea to Counts One through Three. Count Nine was dismissed.[4] Pizarro's Presentence Report ("PSR") assigned him a base offense level of 6. After relevant enhancements and reductions were calculated, Pizarro's total offense level was 26.[5] Combined with a Criminal

---

[3] 302 forms are what the FBI calls reports its agents make summarizing interviews with witnesses or suspects.

[4] Count Nine charged Pizarro with actions that occurred on July 21, 2003. However, as Pizarro was incarcerated at that time, the government conceded that it had misidentified Pizarro as to Count Nine. The district court therefore dismissed the count at the change of plea hearing.

[5] The PSR recommended a fourteen-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H) because the offenses involved a loss in excess of $400,000; a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A) because the offenses involved more than ten but fewer than fifty victims; a two-level enhancement under U.S.S.G. § 2B1.1(b)(3) because the offenses involved a theft from the person of another;

-4-

History Category of II, the applicable Guidelines range was 70-87 months' imprisonment.

The PSR referenced the confession Pizarro had provided to Agent Santiago, as well as the statements found in the 302 forms. Upon reading the PSR, Pizarro's counsel called the Probation Officer, Andrea Cribben ("Cribben"). Cribben told Pizarro's counsel that she had received the confession from the case agent. According to Pizarro, his counsel also contacted AUSA Juan Milanés, who said that he was unaware of the existence of the confession and that he had not provided any 302 forms because he did not have to provide them until trial. On June 4, 2004, the government faxed the 302 forms to Pizarro's counsel, and on June 8, the government faxed the confession.

On June 9, 2004, Pizarro filed a motion arguing that the government had violated Rule 16 of the Federal Rules of Criminal Procedure[6] and Brady v. Maryland, 373 U.S. 83 (1963), because it had not provided Pizarro with either the confession or the FBI 302 forms before Pizarro pled guilty. Although Pizarro stated in the motion that the government's actions called into question the

a two-level enhancement under U.S.S.G. § 2B1.1(b)(9) because the offenses involved the use of sophisticated means; a two-level enhancement under U.S.S.G. § 2B1.1(b)(10) because the offenses involved the possession and use of device-making equipment; and a two-level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility.

[6] Rule 16 details the government's obligations to provide certain documents to the defendant.

voluntariness and intelligence of his guilty plea, he did not ask that he be allowed to withdraw his plea; rather, he asked that the district court adopt his interpretation of the Sentencing Guidelines.

The government filed an opposition to Pizarro's motion on June 16, 2004, stating that it never intended to use the 302 forms at trial and therefore did not have to disclose them under Rule 16(a)(1)(A). The government also stated that the case agent did not receive the confession until May 4, 2004, after he had contacted state police to gather documents to prepare the case for presentation. As soon as the case agent received the confession, he forwarded it to Cribben, who used it in the PSR. The agent also sent the document -- which was in the Spanish language -- to a translator and forwarded a translated copy to the U.S. Attorney's Office on June 7. The confession was then faxed to Pizarro's counsel the following day. According to the government, therefore, no one involved in the case either knew or could have known of the confession's existence prior to May 4, 2004, meaning that the confession could not have been given to Pizarro before he pled guilty on March 1, 2004.

Pizarro was sentenced on July 1, 2004. At the sentencing hearing, the district court denied Pizarro's motion regarding the alleged discovery violations. The court accepted the PSR's calculations, but gave Pizarro a three-level (instead of a two-

level) reduction for acceptance of responsibility, which resulted in a Guidelines range of 63-78 months' imprisonment. The district court sentenced Pizarro to 70 months' imprisonment as to Counts Two and Three and 60 months' imprisonment as to Count One, to be served <u>concurrently</u> with each other and the state sentence.[7] However, in its written judgment, the court stated that Pizarro's federal prison term would run <u>consecutively</u> to his state sentence. Pizarro now appeals, arguing that his plea was not knowing and intelligent because the government failed to disclose the confession or the 302 forms; that he should be re-sentenced pursuant to <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005); that his sentence included some improperly applied enhancements; and that the written judgment should be corrected so that Pizarro's federal prison term runs concurrently with his state prison term, in accordance with the district court's oral pronouncement of sentence.

## II.

### A. Rule 16 Violations and Withdrawal of Plea

We have stated that a "district court may allow withdrawal [of a guilty plea] for 'a fair and just reason.'" <u>United States</u> v. <u>Padilla-Galarza</u>, 351 F.3d 594, 597 (1st Cir. 2003) (quoting Fed. R. Crim. P. 11(d)(2)(B)). Among the relevant factors a court should consider are

---

[7] The court also sentenced Pizarro to three years of supervised release, a $1000 fine, and a $300 mandatory monetary assessment.

> whether a plea was voluntary, intelligent, knowing and complied with Rule 11; the force of the reasons offered by the defendant; whether there is a serious claim of actual innocence; the timing of the motion; and any countervailing prejudice to the government if the defendant is allowed to withdraw his plea.

Id.

Pizarro appears to argue that his guilty plea was not knowing and intelligent because of failures of the prosecutor to disclose (allegedly in violation of Rule 16) both a confession and various statements given by Pizarro. The supposed Rule 16 violations were raised in the district court but not as a reason for withdrawing the plea. So far as we can tell, Pizarro has not sought to withdraw his plea either in the district court or his brief to this Court.

Further, Pizarro has never explained why the disclosure of his prior confession or statements would have caused him not to plead guilty. If anything, disclosure would seem rather to have encouraged a guilty plea. Of course, if Pizarro were asserting that the government had withheld exculpatory evidence, this would be quite a different matter, but there is no such suggestion.

About the best we can make out from the brief is that Pizarro is not interested in a withdrawal of plea at all but may be pressing the following conjecture: that if the government had turned over the confession and other statements at an earlier stage, counsel might have been able to persuade his client to

-8-

accept an earlier and better plea offer from the government. But this argument, obviously resting on considerable conjecture, is not itself expressly developed in Pizarro's brief in this court or supported with any precedent for such a use of Rule 16.

As it happens, it is uncontested that the federal agents did not know about the confession until well after the plea. As for the 302 forms, Pizarro makes no claim that at the time he pled guilty he was ignorant of the fact that he had made statements to the FBI agents during various interviews. There is an argument that the forms should have been disclosed based on Rule 16 language not cited by the government, but we have no reason to resolve the matter. Pizarro has waived any argument that he should have been permitted to withdraw his guilty plea by not seeking to have the plea withdrawn before the district court and not making any developed argument in favor of such relief on appeal.

### B. Sentencing

#### 1. Booker

In his initial brief, filed after the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and our decision in United States v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005), Pizarro argued that his Sixth Amendment rights were violated because the district court sentenced him based on facts that were not found by the jury. Pizarro never mentioned Booker (he mentioned Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely

v. Washington, 542 U.S. 296 (2004)), never claimed that he preserved a Booker error under Antonakopoulos, and never addressed the likelihood that he would receive a more lenient sentence on remand. Further, after filing his initial brief, Pizarro never sought leave to file any supplemental materials to make the above arguments. Instead, at oral argument, which occurred over a year after Pizarro filed his initial appellate brief, Pizarro for the first time argued that he had preserved Booker error.

We have consistently held that, except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived. See, e.g., Piazza v. Aponte Roque, 909 F.2d 35, 37 (1st Cir. 1990). We will therefore not consider Pizarro's arguments made for the first time at oral argument and will hold him to what he argued in his brief.

In his brief, Pizarro argued that the district court violated his Sixth Amendment rights by applying sentencing enhancements based on facts not found by the jury. We have already considered and rejected this argument on numerous occasions, and we reject it again in this case. See Antonakopoulos, 399 F.3d at 75 ("The [Booker] error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a

-10-

mandatory Guidelines system.").  We therefore reject Pizarro's request that he be re-sentenced under <u>Booker</u>.[8]

### 2.  <u>Amount of Loss Attributable to Pizarro</u>

Pizarro also argues that the district court erred in finding him responsible for over $400,000 in losses, which resulted in a fourteen-level enhancement. "We review the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error."  <u>United States</u> v. <u>Bailey</u>, 405 F.3d 102, 113 (1st Cir. 2005) (internal quotation marks omitted). Although it is not entirely clear from Pizarro's brief, it appears that he is making two arguments regarding the imposition of the enhancement:  (1) the district court erred by automatically attributing to him the amount of loss charged in Count Two of the indictment simply because he pled guilty to that count,[9] and (2) that there was insufficient evidence in the record to show that he

_____

[8]  In his brief, Pizarro mentions in passing that several of the enhancements found by the district court were inapplicable to his case.  However, with two exceptions, discussed <u>infra</u>, these arguments are made in such a perfunctory manner, buried within Pizarro's discussion of the constitutionality of his sentence, that we deem them waived.  <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) (stating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

[9]  Pizarro actually argues that the district court found that he was responsible for the totality of the scheme.  This is incorrect. The evidence at sentencing was that the actual loss caused by the scheme was over $600,000, and the intended loss was over $1.5 million.  The district court found that Pizarro was responsible for over $400,000 in losses.

was responsible for over $400,000 in losses. We deal with each in turn.

At sentencing, a defendant in a jointly undertaken criminal activity is liable for the harm resulting from acts directly attributable to him and for the harm resulting from the reasonably foreseeable acts of others taken in furtherance of the jointly undertaken criminal activity. See U.S.S.G. § 1B1.3(a)(1), (3). However, the fact that a defendant has pled guilty to involvement in a jointly undertaken criminal activity does not automatically mean that the defendant is responsible for all the losses caused by the jointly undertaken criminal activity. In United States v. Colón-Solís, 354 F.3d 101, 102 (1st Cir. 2004), the defendant entered a straight guilty plea to a conspiracy involving more than five kilograms of cocaine.[10] At sentencing, the

---

[10] Colón-Solís involved a guilty plea to a conspiracy count, whereas the instant case involves a guilty plea to a substantive count (bank fraud). However, we do not think the analysis changes. The reason has to do with the bank fraud statute, 18 U.S.C. § 1344, and the relevant guideline, U.S.S.G. § 1B1.3.

18 U.S.C. § 1344 defines bank fraud as "a scheme or artifice." Under U.S.S.G. § 1B1.3(a)(1), a defendant is liable for all acts directly attributable to him and "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise . . . whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a) (1)(B) (emphasis added). In accordance with the statute, Count Two charged Pizarro and others with a scheme and artifice to defraud certain financial institutions. Thus, Count Two qualifies as a "jointly undertaken criminal activity" for purposes of U.S.S.G. § 1B1.3. No one has argued that $400,000 in losses resulted from acts directly attributable to Pizarro. Therefore, in determining

-12-

district court found that the defendant was responsible for five or more kilograms of cocaine, based <u>solely</u> on the defendant's plea. <u>Id.</u> We found that "automatically attributing to the [defendant] the full amount of drugs charged in the indictment and attributed to the conspiracy as a whole" was error. <u>Id.</u> at 103. We therefore vacated the sentence, stating that, in the drug conspiracy context, "the court is required to make an individualized finding as to drug amounts attributable to, or foreseeable by, that defendant." <u>Id.</u> In subsequent cases, we have applied <u>Colón-Solís</u> to fraud cases. <u>See</u> <u>United States</u> v. <u>Rodríguez-González</u>, 433 F.3d 165, 168 (1st Cir. 2005). It is therefore clear that, in cases involving a jointly undertaken criminal activity, a district court must make an individualized determination regarding the amount of loss attributable to, or reasonably foreseeable by, a defendant, and may not rely solely on what was charged in the jointly undertaken criminal activity count of an indictment, even if the defendant entered a guilty plea.

We are initially troubled by this case because it appears that the district court based its finding at least in part on the fact that Pizarro pled guilty to Count Two, which alleged his involvement in a scheme to defraud different financial institutions of over $400,000. For example, the court stated that "I notice

---

the amount of loss attributable to Pizarro, the district court was required to determine which acts taken by others in furtherance of the scheme were reasonably foreseeable to Pizarro.

that the defendant pled guilty to Count 2 which alleged that the loss was in excess of $400,000. So why are we wasting time? He admitted it. That's it. It is the same as if he had gone to trial and was found guilty as to that amount." However, elsewhere the court indicated that it had to make a finding as to the amount reasonably foreseeable to Pizarro based on the evidence as it applied to Pizarro. For example, the court stated: "I told you that I have to find what is the reasonable [sic] foreseeable amount of the harm, and that's what we are doing here." The court also stated that "[t]he fact is that the intended loss that it is reasonably foreseeable, all the machines, all of this sophisticated means, then that's what I have to decide, what was reasonably foreseeable to him." (Emphasis added).[11]

Having reviewed the record, we believe that the district court made its finding that Pizarro was responsible for $400,000 in losses for two reasons: 1) the evidence presented by the government, and 2) the fact that Pizarro had pled guilty to a scheme involving over $400,000. The first reason is permissible

_____

[11] We note that the government stated several times that the issue before the court was whether the losses caused by his others in the scheme were reasonably foreseeable to Pizarro. While this is obviously not conclusive on the reasoning of the district court, we find it relevant. If, for example, the government had simply argued that, because Pizarro pled guilty to Count Two, he was responsible for $400,000 in losses, that would make it more probable that the district court had simply attributed the amount of loss in the indictment to Pizarro without an individualized determination.

-14-

but the second is an error of law under our precedent. This conclusion is borne out by the court's pronouncement of sentence:

> As the offense involved a loss in excess of $400,000, I do find that in this case, there has been evidence that the loss exceeded $400,000, and also I find that the defendant pled guilty to the specific amount as charged in Count 2, that is bank fraud in excess of $400,000, so that's why the Court finds the offense involved in excess of $400,000 . . . .

(Emphasis added). We therefore conclude that the district court's decision to find Pizarro responsible for over $400,000 in losses was based in part on an error of law.

However, that does not mean that we must automatically remand for re-sentencing. In Colón-Solís, our decision to remand was based on the fact that the district court's sole foundation for finding the defendant responsible for greater than five kilograms of cocaine was an error of law: that the drug amount charged in the indictment and attributed to the conspiracy was automatically attributable to the defendant. 354 F.3d at 102-03. We also noted that the record was barren of any evidence as to the drug amounts directly attributable to, or foreseeable by, the defendant. Id. at 103. The instant case presents a different situation, as the district court's decision is not based solely on an error of law. If there is enough evidence to support the alternative explanation for the court's finding, the error would be harmless and there would be no reason to remand to the district court when the result will be the same. We therefore turn to whether there is enough

-15-

evidence to show that Pizarro was responsible for $400,000 in losses. We conclude that there is.

As we noted above, a defendant in a jointly undertaken criminal activity is liable for all losses directly attributable to him and for all losses resulting from reasonably foreseeable acts committed by others in furtherance of the jointly undertaken criminal activity. In the instant case, it is undisputed that the amount of loss directly attributable to Pizarro was around $21,000, and that the amount of actual loss attributable to the entire scheme was over $600,000. The issue, then, is whether Pizarro could have reasonably foreseen the losses caused by others involved in the scheme such that he should be held responsible for $400,000 in losses.

We have stated that, in making the above determination, a court must first "determine what acts and omissions of others were in furtherance of the defendant's jointly undertaken criminal activity. This task requires the court to ascertain what activity fell within the scope of the specific conduct and objectives embraced by the defendant's agreement." United States v. LaCroix, 28 F.3d 223, 227 (1st Cir. 1994). The court must then "determine to what extent others' acts and omissions . . . would have been foreseeable by a reasonable person in defendant's shoes at the time of his or her agreement." Id.

-16-

The acts of Pizarro's co-schemers were within the scope of Pizarro's agreement. Pizarro argues that he only had an agreement with the leader of the scheme, Angel Lacén-de Jesús ("Lacén"), to make purchases. However, the evidence belies this argument. Under the Guidelines, "the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3, comment. (n.2). Here, the evidence shows that Pizarro implicitly agreed to be a part of the entire scheme. Pizarro was part of the scheme from its inception and knew the leaders of the scheme well. He grew up with one of the leaders, Lacén, and also served as his bodyguard before and up to the point that the scheme began. Pizarro admitted that he was paid $200 a day to guard Lacén "while he would do his work, which was the counterfeiting of credit cards." Thus, even before he joined, Pizarro knew what Lacén was doing and planning. Pizarro also admitted that he knew the other leader of the scheme, Eric Adorno-Rosario ("Adorno"), and knew that Adorno and Lacén were partners in the counterfeit credit card operation. He also admitted that, after serving as a bodyguard for Lacén, he became a purchaser, "which is the person who goes shopping with the cards that [Lacén] would make and program."

This is not a case where a defendant agrees to make a one-time transaction for a scheme and gets caught. Here, Pizarro stated that he was paid $100-$500 per day and that he worked a few

days a week. There was also evidence that others accompanied Pizarro to the stores, so he knew that others were involved in the scheme. Given all of this evidence, we find that the acts of others in furtherance of the scheme were within the scope of an implicit agreement that Pizarro made.

We now turn our attention to what losses were reasonably foreseeable to Pizarro. Given the evidence presented at sentencing, we conclude that the district court did not err in finding that $400,000 was reasonably foreseeable to Pizarro. We base this finding on Pizarro's knowledge of the inner details of the scheme.

In LaCroix, we stated that:

> foreseeability may be established . . . by a defendant's knowledge of the nature and extent of a conspiracy in which he is involved . . . . It is both good law and good logic that a defendant's awareness of the inner workings of a conspiracy in which he is participating is germane to, and often highly probative of, accomplice attribution . . . . Such knowledge frequently will suffice to prove the defendant's ability to foresee the acts of coconspirators.

28 F.3d at 229. The instant case presents an example of what we discussed in LaCroix. As we noted above, Pizarro was with the scheme from the beginning. He knew the leaders of the scheme and the details of their roles in the scheme. He also knew others in the scheme. Further, Pizarro knew details about how the leaders made the counterfeit credit cards, was able to give details about

-18-

how the programs used in making the cards were accessed, and knew where the leaders stored their computers. He knew how the machines worked, and also knew that the leaders made not just counterfeit credit cards, but also counterfeit checks and fake licenses. He also knew that the leaders got their computers from a man named Francisco, and stated that Francisco was able to obtain equipment "to commit all types of fraud." Further, in his role as a purchaser, Pizarro knew exactly why he was making the purchases. He admitted that every few days he would change businesses where he made purchases in order to avoid being identified by an establishment's personnel. In sum, while his actual acts in furtherance of the scheme only involved bodyguard duties and making purchases, Pizarro was intimately acquainted with the details of the scheme. We therefore hold that the district court correctly found that the loss of $400,000 was reasonably foreseeable by Pizarro.

Pizarro attempts to get around these difficulties by making two arguments: (1) that his role was minor and that he only participated in exchange for drugs, and (2) that he did not participate in the scheme once he went to jail in July 2003. We reject both of these arguments. First, it is settled that a district court may correctly attribute "the entire loss to appellant" even considering "the fact that he may have played only a supporting role." LaCroix, 28 F.3d at 231. Here, the fact that

Pizarro only acted in a supporting role in no way means that the losses stemming from the jointly undertaken criminal activity were not reasonably foreseeable to him, especially given his knowledge of the inner workings of the scheme. Further, although Pizarro was allegedly given drugs in exchange for his services, there was also evidence that he was paid between $100-$500 per day and worked two to three days per week. In other words, he was not simply making purchases in exchange for drugs.

Second, Pizarro has presented absolutely no evidence that he ever withdrew from the scheme. We have stated that "in order to withdraw from a conspiracy, a conspirator must act affirmatively either to defeat or disavow the purposes of the conspiracy. Typically, that requires either a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the enterprise and its goals." United States v. Piper, 298 F.3d 47, 53 (1st Cir. 2002); see also United States v. Robinson, 390 F.3d 853, 882 (6th Cir. 2004) (stating that, even assuming that after his arrest the defendant was no longer an active participant in the conspiracy, "he is nonetheless presumed to be a continuing member, and is chargeable for the subsequent acts of co-conspirators, so long [as] the conspiracy was ongoing and [the defendant] did not establish his affirmative withdrawal

from the conspiracy").[12]  At sentencing, the prosecutor noted that Pizarro -- although he initially gave a statement to the Commonwealth agent who arrested him  -- had not provided a "full confession" and had been "obstinate with respect to his culpability in this case."  In conclusion, Pizarro has not provided evidence that he gave a full confession or informed others involved in the scheme that he was abandoning the scheme, and the fact that he was in jail does not in and of itself mean that he withdrew from the scheme.  See, e.g., Robinson, 390 F.3d at 882 (stating that "a defendant's arrest . . . does not qualify as an affirmative, volitional act of withdrawal [from a conspiracy]"); United States v. Melton, 131 F.3d 1400, 1405 (10th Cir. 1997) (stating that a defendant's arrest, by itself, is insufficient to constitute withdrawal from a conspiracy).

We find that the district court did not commit clear error in its finding that there was enough evidence to find Pizarro responsible for over $400,000 in losses.  We base this finding primarily on Pizarro's relationship with the leaders of the scheme and his knowledge of various intimate details of the scheme.  We therefore affirm the district court's decision to apply a fourteen-level enhancement to Pizarro's sentence.

---

[12]  As we noted above in footnote 10, Count Two was not a conspiracy count.  Nevertheless, since Count Two alleged Pizarro's involvement in a scheme, we think the analysis regarding withdrawal from a conspiracy applies with equal force to withdrawal from a scheme to defraud financial institutions.

### 3. **Theft From The Person of Another Enhancement**

Pizarro has also challenged a two-level enhancement of his offense level pursuant to U.S.S.G. § 2B1.1(b)(3), which applies "[i]f the offense involved a theft from the person of another," id. This challenge is only dubiously preserved, as Pizarro devotes but half a paragraph to it and performs none of the spadework necessary to enable us to figure out precisely what is going on. But the enhancement clearly affects Pizarro's sentence, and it is easy to understand the thrust of what he is arguing once the guideline (and its accompanying commentary) is consulted. In light of this, and to guide the future application of this particular guideline, it is useful to say something about the issue.

At first blush, it looks like § 2B1.1(b)(3) does not apply here at all. Even if one could construe the text of the guideline as ambiguous, the commentary to the guideline makes it clear that the guideline is intended to apply to physical takings, not to abstract forms of theft that take place far from the victim, like credit card fraud. The application note defines "theft from the person of another" as "theft, without the use of force, of <u>property that was being held by another person or was within arms' reach</u>" (emphasis added), and it provides as examples "pick-pocketing and non-forcible purse-snatching, such as the theft of a purse from a shopping cart." Id., comment. (n.1). The background note explains that such theft "receives an enhanced sentence

-22-

because of the increased risk of physical injury" that inheres in such activity.  Id., comment. (backg'd).

The case law on this particular guideline -- none of which is cited by Pizarro or the government -- is consistent with the view that the guideline targets physical and therefore potentially violent (even if non-forcible) forms of theft.  See United States v. Rizzo, 349 F.3d 94, 98, 100 (2d Cir. 2003); United States v. Londono, 285 F.3d 348, 350-51, 353-54 (5th Cir. 2002); United States v. Jankowski, 194 F.3d 878, 885-86 (8th Cir. 1999). To the extent Pizarro's PSR recommended this particular enhancement based upon a contrary reading of § 2B1.1(b)(3), it was fairly evidently mistaken.

But the district judge was more discerning in his reading of the guideline.  Looking at the transcript of the sentencing hearing, it is apparent that the judge recognized immediately that some kind of physical taking was required to trigger this guideline, and said initially that he was "going to eliminate that" enhancement.  At that point, the AUSA intervened to explain that victims' "[credit] cards were being taken" as part of the conspiracy.  Pizarro's lawyer did not object (nor had he objected to the enhancement in his written objections to the PSR), and the district court included the enhancement.

We have some basis for conjecturing that the AUSA, doubtless innocently, was referring not to any physical theft of

credit cards from the victims, but to the practice by which co-conspirators, employed at retail establishments, would take credit cards handed over voluntarily by customers (to pay for goods or services) and surreptitiously swipe them through machines designed to "steal" sufficient information from the cards to permit them to be copied. The cards would then be returned to the owners; the only theft was of the information stored on the credit cards' magnetic stripes. This was not made clear to the judge at the sentencing hearing.

If that is all that the AUSA meant when he said "[credit] cards were being taken," then that form of theft falls just as much outside the guideline as the form of credit card fraud practiced by Pizarro himself in his role in the conspiracy (using forged credit cards to purchase goods). Such theft involves no physical taking and no appreciable risk of escalating to violence. We do not know for certain what the AUSA was referring to at the sentencing hearing, and therefore under the circumstances we do not know whether the district court erred when it applied the enhancement. We are therefore in no position to engage in plain error review (which, of course, would be all Pizarro is entitled to, since he failed to raise this objection below).

Although counsel for Pizarro may have an explanation for having not pursued the objection below, this may well afford some basis for an ineffective assistance of counsel claim, given a plain

reading of the guideline commentary and the apparent lack of evidence that any credit cards were physically stolen.  But of course this is a matter that must be raised by a § 2255 attack on competence of counsel, see 28 U.S.C. § 2255, and a matter we are not in a position to address, except to say that, although we take no view on whether ineffective assistance occurred here, it is promising enough that if a habeas petition is filed, the court should consider appointing counsel for Pizarro.

### C.  Concurrent vs. Consecutive Sentences

As we have already noted, in its oral pronouncement of Pizarro's sentence, the district court stated that Pizarro's federal prison term would run concurrently with the sentence he was serving for state convictions.  Nevertheless, the written judgment said that the sentences would run consecutively.  The government concedes that the case should be remanded so that the written judgment can be modified to agree with what the district court stated at the sentencing hearing.  See United States v. Muñiz, 49 F.3d 36, 42 n.5 (1st Cir. 1995) ("Where, as in this case, the district court's oral expression of its sentencing rationale varies materially from its subsequent written expression of that rationale, appellate courts have tended to honor the former at the expense of the latter.").  We will therefore remand the case so that this portion of the sentence may be corrected.

### III.

For the foregoing reasons, we affirm the district court's decision not to allow Pizarro to withdraw his plea. We vacate Pizarro's sentence and remand to the district court so that the written judgment may be corrected to agree with the oral sentence.

**<u>Affirmed in part, Vacated in part, and Remanded</u>**.